**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

UNITED STATES OF AMERICA,

v.                                                        1:12-cr-373-WSD

BENJAMIN SANDERS,
                    Defendant.

## OPINION AND ORDER

This matter is before the Court on whether, on the facts of this case, the

Court can order Defendant Benjamin Sanders ("Defendant") to pay restitution to

L.C. as part of his sentence.

## I.    INTRODUCTION

This case presents a unique issue regarding restitution.  Defendant was

convicted of the possession of pornographic images of children.  Defendant, in

addition to possessing child pornographic images obtained from the internet,

possessed pornographic images of a victim known as L.C, Defendant's niece.  L.C.

alleges that in addition to taking sexually explicit photographs of her, Defendant

also sexually assaulted and abused her.  Defendant was not charged in this or any

other prosecution with sexually assaulting or abusing L.C., and was not convicted of producing pornographic images of L.C.

The restitution the Government seeks is for therapy to treat L.C. resulting, generally, from Defendant's alleged sexual assaults and abuse of L.C., offenses for which Defendant was not charged or convicted. Defendant unequivocally denies that he sexually assaulted or abused L.C. and the Government's only evidence of such conduct are L.C.'s unsworn, out of court statements that they occurred. The question is whether restitution can be ordered here for treatment other than that resulting from the offense of conviction.

## II.    BACKGROUND

On November 13, 2012, Defendant was indicted.[1]  On August 13, 2013, the Government filed its Superseding Indictment [43] (the "Indictment"), charging Defendant with: (i) using a minor to produce visual depictions of the minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2251(a) (Count One); (ii) receipt of visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1) (Count Two); and

---

[1]    Defendant was indicted for: (i) using "a person under the age of eighteen to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct" in violation of 18 U.S.C. § 2251(a); and, (ii) "knowingly possess[ing] one or more devices that contained one or more visual depictions . . . the production of which involved the use of a minor engaging in sexually explicit conduct . . ." in violation of 18 U.S.C. § 2252(a)(4)(B).

(iii) possession of visual depictions of minors engaged in sexually explicit conduct that were produced using minors engaging in sexually explicit conduct and shipped and transported by computer in interstate and foreign commerce, in violation of 18 U.S.C. § 2252(a)(4)(B) (Count Three).

On February 26, 2014, pursuant to the Guilty Plea and Plea Agreement entered into between Defendant and the Government [58-1] (the "Plea Agreement"), Defendant pleaded to, and was found guilty of, Count Three of the Indictment [58] -- possession of child pornography that had been shipped or transported in interstate or foreign commerce. The Government agreed, in the Plea Agreement, to dismiss the remaining Indictment counts. At the change of plea hearing held on February 26, 2014 (the "Plea Hearing"), Defendant admitted that he possessed pornographic images of minors engaging in sexually explicit conduct which he obtained using the internet. He then also admitted possessing pornographic images of his niece, L.C., a 15-year old juvenile. The evidence is that the images of L.C. were produced in Georgia. Defendant does not admit he produced the images but there is evidence they were stored on a camera and hard drive that he used and which were found in his home. The Government agrees that the images of L.C. were not received or sent in interstate or foreign commerce.

This prosecution began by L.C.'s report to Cobb County law enforcement authorities that Defendant had sexually molested her. Even though Defendant ultimately pled guilty only to possession of child pornography that had traveled through interstate or foreign commerce, the Government asserts that Defendant also had a sexual relationship with L.C. and that he sexually assaulted her and restitution should be based on this conduct as well as his offense of conviction. At sentencing, the Government chose not to present any evidence of a sexual relationship with, or sexual assaults of, L.C. by Defendant. It relies on L.C.'s report of her sexual assault and abuse by Defendant to Cobb County, Georgia law enforcement and on L.C.'s statements about Defendant's conduct which are in the report of the therapist who evaluated L.C. prior to sentencing.

In his Plea Agreement and at the Plea Hearing, Defendant was advised he would have to pay restitution to any victim of his offense. Defendant agreed to:

> pay full restitution of all victims of the offense to which he is pleading guilty and all relevant conduct, including, but not limited to, any counts dismissed as a result of this Plea Agreement.

(Plea Agreement at 7).

The Government seeks restitution for counseling and therapy for L.C. and the cost of cab fare for L.C. to attend these sessions. The costs are based on the evaluation of Ms. Dana W. Davis ("Davis"), a licensed clinical social worker with

the Terrebonne Children's Advocacy Center in Terrebonne, Louisiana. Davis prepared her evaluation report[2] (the "Davis Report") on L.C., stating her findings and offering her assessment of the cost of future treatment. Davis's seven-page report detailed the harm L.C. suffered as a result of the sexual abuse and sexual assaults that L.C. claims Defendant committed. The Davis Report, in one sentence, noted that L.C. was unsure if and how the sexually explicit photographs of her that Defendant possessed were disseminated, and that this uncertainty causes her anxiety. (Davis Report at 2).[3] Davis relied on L.C.'s report of Defendant's conduct toward her in reaching her diagnoses and plan for therapy.

Davis estimated the aggregate cost of counseling and therapy for L.C. to be $53,200. This is the amount of restitution, without cab fare, which the Government argues that Defendant should be required to pay to L.C.[4] The restitution amount was calculated based on an estimated rate of $152 per session, which was multiplied by the number of hours of therapy Davis opined that L.C. will require.

---

[2]      The Davis Report was admitted into evidence at the June 19, 2014, sentencing hearing as Government Exhibit 4.

[3]      The Davis Report does not state that L.C. claimed Defendant produced the images of her, only that he possessed them.

[4]      The Government seeks transportation costs of $8,820, for a total restitution request of $62,020. (Memorandum at 12).

On June 19, 2014, the Court held a sentencing hearing (the "Sentencing Hearing"), at which the Court, in addition to sentencing Defendant, addressed the restitution sought by the Government and to which Defendant objected. The Court noted that the Supreme Court's recent decision in <u>Paroline v. United States</u>, stated that the purpose of restitution under 18 U.S.C. § 2259 is to compensate victims for losses caused by the offense of conviction. (Sentencing Hearing Transcript p. 89, lines 21-25; p. 90, lines 1-5). The Court stated that the Davis Report identified that L.C.'s need for therapy results from the alleged sexual assaults committed by Defendant and the pornographic images of L.C. (<u>Id.</u> p. 90, lines 6-12). Defendant's conviction, however, was only for the offense of possession of child pornography. (<u>Id.</u> p. 90, lines 13-15). The Government acknowledged that there must be a link between the restitution losses and the offense of conviction, but noted that the Plea Agreement expanded Defendant's restitution obligation to include not only the offense to which he pleaded guilty, but to all relevant conduct, including the dismissed charges. (<u>Id.</u> p. 92, lines 12-20). The Government also asserted that enough evidence of the sexual assaults exists for the Court to consider this conduct when making its decision on restitution. (<u>Id.</u> p. 98-100). The Government asserts that the entire $53,200 cost of therapy and associated

transportation expenses should be imposed as restitution Defendant is required to pay.

To consider all of the relevant restitution evidence and determine its statutory authority to award restitution, the Court, with the agreement of the Government and Defendant, decided to sentence Defendant at the Sentencing Hearing but to address the issue of restitution and the claimed restitution amount at a later scheduled hearing. (Id. p. 112, lines 4-12). That hearing was held on July 11, 2014 (the "Restitution Hearing").

The Court explained, at the Restitution Hearing, that while restitution was a term of the Plea Agreement, restitution had to be awarded consistent with the provisions of 18 U.S.C. § 2259. (Restitution Hearing Transcript p. 137-40). The Court also explained that the Davis Report focused almost exclusively on the harm L.C. suffered as a result of the sexual assaults and abuse, and that the report did not provide the Court with guidance as to how much of L.C.'s therapy needs were based upon Defendant's possession of pornographic images of her. The Government acknowledged that it could have retained an expert to apportion the therapy needs related to the possession of child pornography, but that apportionment had not been made. (Id. p. 153, lines 3-7, p. 154, lines 14-20). The Government asserted, despite the lack of apportionment, that the Court had the

authority to award the entire requested amount of restitution based upon L.C.'s anxiety over the pornographic images of her. Because L.C.'s therapeutic needs were the result of Defendant's conduct toward L.C., he should be required to pay for all of the therapy required to address the damage he inflicted.

To provide the parties with an opportunity to address for what conduct the Court could award restitution, the impact of the Plea Agreement on the allowed scope of the conduct for which restitution could be awarded, and the Court's statutory authority to award restitution, the Court ordered the parties to file memoranda on the restitution issue. The Court suggested that the parties address, *inter alia*, whether the alleged sexual assaults and related abuse should be included in the calculation of losses even though these offenses are not "crimes under [Chapter 110]." To the extent restitution is sought for therapy related to the alleged sexual assault and abuse, the Court suggested that the Government identify the evidence in the record that the Court could consider in determining if a preponderance of the evidence supports that Defendant sexually assaulted or sexually abused L.C.

On July 25, 2014, the Government filed its Sentencing Memorandum Regarding Restitution [95] ("Memorandum"). On August 8, 2014, Defendant filed

his Response [96] to the Memorandum, and, on August 15, 2014, the Government filed its Reply [97].

## III. DISCUSSION

### A. <u>Legal Standard</u>

Restitution is required to be made to minor victims of certain sexual offenses. Section 2259 of Title 18 provides that "the court shall order restitution for any offense under [Chapter 110 – Sexual Exploitation and Other Abuse of Children]." 18 U.S.C. § 2259(a). Subsection (b) of § 2259 further provides that an "order of restitution under this section shall direct the defendant to pay the victim . . . the full amount of the victim's losses . . . ." 18 U.S.C. § 2259(b)(1). All losses include "medical services relating to . . . psychiatric[] or psychological care" and "necessary transportation . . . expenses . . . ." 18 U.S.C. § 2259(b)(3)(A), (C). "The issuance of a restitution order under this section is mandatory." 18 U.S.C. § 2259(b)(4). Subsection 2259(c) provides: "For purposes of this section, the term 'victim' means the individual harmed as a result of a commission of a crime under [Chapter 110]." 18 U.S.C. § 2259(c).

The offense for which Defendant was convicted -- knowingly possessing visual depictions of minors engaging in sexually explicit conduct that traveled in interstate or foreign commerce, in violation of 18 U.S.C. § 2252(a)(4)(B) -- is a

crime under Chapter 110. Restitution required to be paid under "§ 2259 is intended to compensate victims for losses caused by the offense of conviction." Paroline, 134 S. Ct. 1710, 1720 (2014). Restitution is required in the full amount of the victim's losses suffered by the victim as a proximate result of the offense and specifically the incurred and future expenses for therapy and counseling for the victim of sexual abuse. 18 U.S.C. § 2259(b)(3); see also United States v. Danser, 270 F.3d 451, 455-56 (7th Cir. 2001), United States v. Crandon, 173 F.3d 122, 126-27 (3rd Cir. 1999), cert. denied, 528 U.S. 855 (1999).

Restitution orders under § 2259 are issued and enforced in accordance with 18 U.S.C. § 3664 "in the same manner as an order under section 3663A." 18 U.S.C. § 2259(b)(2). The Government bears the burden of proving the amount of the victim's losses by a preponderance of the evidence, and the court must resolve any disputes as to the proper amount or type of restitution according to the same standard of proof. 18 U.S.C. § 3664(e). The amount of restitution "must be supported by specific factual findings." United States v. Singletary, 649 F.3d 1212, 1222 (11th Cir. 2011). Restitution is not required to be calculated with precision and may be approximated "so long as the basis for reasonable approximation is at hand." United States v. Futrell, 209 F.3d 1286, 1291-92 (11th Cir. 2000).

B.    Analysis

The Government acknowledges that the Court does not have authority to

order restitution for the dismissed counts and relevant conduct pursuant to

18 U.S.C. § 2259.[5]  (Memorandum at 2).  The Government also does not argue that

---

[5]    Section 2259 provides that a restitution order shall direct a defendant to pay the victim the "full amount of victim's losses . . . ."  18 U.S.C. § 2259(b)(1). "[T]he term 'victim' means the individual harmed as a result of a commission of a crime under this chapter . . . ."  18 U.S.C. § 2259(c).  The sexual assaults alleged by L.C. are not crimes "under this chapter" and thus do not trigger mandatory restitution pursuant to § 2259.
    The Government, in acknowledging it cannot expand the restitution allowed by § 2259, also appears to acknowledge that the Plea Agreement cannot expand the Court's statutory authority to award restitution to L.C.  At the Sentencing Hearing, the Court noted that, in a case involving the Victim and Witness Protection Act (the "VWPA"), prior to its amendment in 1990, the Supreme Court determined that the VWPA permitted a sentencing judge to order restitution "only for the loss caused by the specific conduct that is the basis of the offense of conviction." Hughey v. U.S., 495 U.S. 411, 413 (1990).  Our Circuit, also interpreting the unamended VWPA, held that "[p]arties to a plea agreement cannot increase the statutory powers of the sentencing judge to authorize restitution simply by stipulating to restitution beyond that allowed under the relevant version of the Act."  United States v. Young, 953 F.2d 1288, 1290 (11th Cir. 1992).
    Congress later amended the VWPA by adding § 3663(a)(3), authorizing sentencing courts to award restitution to the extent agreed upon by the parties in a plea agreement, even if beyond those acts for which the defendant was convicted. 18 U.S.C. § 3663(a)(3); United States v. Schrimsher, 58 F.3d 608, 610 (11th Cir. 1995).  Section 2259 does not contain a provision authorizing sentencing courts to award restitution pursuant to a plea agreement.
    Assuming, *in arguendo*, that the Plea Agreement could expand the Court's authority to award restitution, the Court notes that the Plea Agreement does not provide for restitution for the alleged sexual assaults.  The Plea Agreement provides that Defendant would pay restitution for "the offense to which he is pleading guilty and all relevant conduct . . . ."  (Plea Agreement at 7).  "Relevant

it may, in a plea agreement, expand a restitution award beyond what is statutorily authorized. The Government asserts, however, that the Court has authority to order the full amount of restitution the Government requested. (Id.). The Government argues that L.C.'s need for mental health treatment as a result of Defendant's possession of child pornography is inseparable from Defendant's alleged sexual abuse of L.C. (Id. at 4). The expense of treatment for this abuse, the Government contends, may be ordered to be paid as restitution, even though Defendant was not convicted of, or even charged with, the sexual abuse alleged by L.C. (See id.).

Defendant asserts that the Government's evidence is insufficient to allow the Court to order restitution to L.C. (Response at 3). He also argues that L.C. is not a

---

conduct" is defined by the Sentencing Guidelines as "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1)(A). Defendant was not charged with sexual assault, did not admit to producing images of L.C., and there is no evidence that an assault or production of images occurred during or were related to the commission of the crime of conviction -- possession of child pornography. The Court is unable, even if it had statutory authority to consider the Plea Agreement's restitution provision, to conclude that Defendant agreed to provide restitution for alleged sexual assaults he denies he committed, and for which the only evidence are second hand reports of L.C.'s statements to others. The evidence in the record does not show who produced the images of L.C.

"victim" of the crime of conviction, and, as a result, the Court does not have authority to award any restitution to her under § 2259. (Id. at 3-4). The Court first considers whether L.C. is a "victim" for purposes of § 2259.

1. Whether L.C. is a victim of Defendant's offense of conviction

Defendant was convicted of the possession of depictions of minors engaging in sexually explicit conduct that were "shipped and transported in interstate or foreign commerce." (Indictment at 2-3; Plea Agreement at 1). The fifth element of the crime to which Defendant pleaded guilty required interstate or foreign shipment or transportation of the pornographic images. The only images which the Government argues are related to L.C.'s need for treatment are those of L.C. that are referenced briefly in the Davis Report. Because there is no evidence that the images of L.C. were shipped or transported in interstate or foreign commerce, Defendant argues that L.C. is not a "victim" of the offence of conviction and thus is not entitled to mandatory restitution under § 2259(a). (Response at 4).

Count Three of the Indictment accused Defendant of:

knowingly possess[ing] one or more visual depictions of minors engaging in sexually explicit conduct . . . said depictions having been (a) produced using minors engaging in sexually explicit conduct and (b) shipped and transported in interstate and foreign commerce, by any means including by computer, all in violation of Title 18, United States Code, Section 2252(a)(4)(B).

13

(Indictment at 2-3). Count Three tracks the language of § 2252(a)(4)(B) which makes it illegal to possess depictions of minors engaging in sexually explicit conduct which were "mailed, or [] shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce . . . ." 18 U.S.C. § 2252(a)(4)(B). The Government argues that the interstate or foreign commerce element of § 2252(a)(4)(B) is satisfied with regards to L.C.'s images because the images were "produced using materials which have been mailed or so shipped or transported [in interstate or foreign commerce]" -- an offense that was not charged. (Reply at 1) (quoting 18 U.S.C. § 2252(a)(4)(B)).[6]

---

[6] The Government, relying on metadata from the pornographic images of L.C., asserts that these images were produced using an Olympus E-510 camera, which is manufactured in China and not in Georgia. (Id. at 2-4). The Government argues also that Defendant possessed copies of these images on a Western Digital Hard Drive, which contains a label stating that it is a "Product of Thailand." (Id. at 4). Defendant denies having produced the images, but an Olympus E-510 camera and the Western Digital Hard Drive, which contained pornographic images of L.C., were seized at his residence. The Government asserts that it presented evidence in obtaining the Indictment that Olympus E-510 cameras are not manufactured in Georgia. (Id. at 2). The Government did not present any evidence at the Plea Hearing, Sentencing Hearing, or Restitution Hearing concerning where Olympus E-510 cameras or Western Digital Hard Drives are manufactured. For the purpose of this Order, the Court assumes that both the Olympus E-510 camera and the Western Digital Hard Drive were shipped or transported to Georgia in interstate or foreign commerce. The Court notes that Defendant admitted at the Plea Hearing that the federal basis for the plea presented by the Government was that Defendant had a variety of images of child pornography, the "vast majority" of which he had downloaded into his computer from internet sources generally. (Plea Hearing Transcript at 48-49).

At the Plea Hearing, the Government listed the elements of Count Three. (Plea Hearing Transcript p. 34, lines 1-21). The Government stated that the fifth element they would need to prove was that the pornographic images Defendant possessed "had been shipped or transported using any means or facility of interstate commerce or in or affecting interstate or foreign commerce." (Id. p. 34, lines 18-21). Had the case gone to trial, the Government stated that the evidence would establish that Defendant possessed computers and electronic storage devices that contained over one thousand images and videos of child pornography, and that a forensic examination of these images revealed that they had been shipped using the internet in interstate or foreign commerce. (Id. p. 47, lines 11-25, p. 48, lines 1-2).[7]

Defendant pleaded guilty to Count Three of the Indictment. (Plea Agreement at 1). Count Three did not charge Defendant with possession of pornographic images of minors that were "produced using materials which have been mailed or [] shipped or transported [in interstate or foreign commerce]." (See Indictment at 2-3). At the Plea Hearing, the Government did not reference Defendant's possession of pornographic images of minors -- including L.C. -- that

---

[7]    The Government does not contend that the images of L.C. were obtained over the internet, or in interstate or foreign commerce. (See Plea Hearing Transcript at p. 48, lines 18-24).

were produced "using materials which [had] been mailed [] shipped or transported [in interstate or foreign commerce]." Defendant certainly did not plead guilty to possessing images produced using materials shipped in interstate or foreign commerce.

To support its restitution argument, the Government now seeks, in essence, to retroactively amend its Indictment and the interstate and foreign commerce element to which Defendant pleaded guilty, to include the additional grounds that Defendant possessed pornographic images of a child -- L.C. -- that were "produced using materials which have been mailed or so shipped or transported . . . ." See 18 U.S.C. § 2252(a)(4)(B). This revisionist pleading is not allowed, including to construct a basis to support an award of restitution.

The Government, for its own reasons, chose not to indict Defendant for possession of child pornography that had been "produced using materials which have been mailed or so shipped or transported."[8] The Government cannot now

_____

[8] Count One of the original indictment [1] and the Indictment accused Defendant of producing child pornography based upon his photographing L.C. using the Olympus E-510 camera, "said camera having been mailed, transported, and shipped in interstate and foreign commerce. (Indictment at 1). The Government thus believed at the time it indicted Defendant that he possessed such a camera and that he possessed images that were produced using such a camera. The Government thus could have, on the information it allegedly possessed at that time, indicted Defendant for possessing pornographic images of a minor that had been "produced using materials which have been mailed or so shipped or

seek restitution for a crime with which the Government did not charge Defendant, and to which Defendant did not plead guilty and was not convicted.[9]

The question here is whether L.C. is a victim of Defendant's offense of conviction requiring that mandatory restitution be paid to her for her therapeutic care. The offense of conviction here is possession of child pornography that was sent or transmitted through interstate or foreign commerce. Defendant was not charged with sexual assault, and there is not a factual basis to show that images of L.C. ever traveled outside of Georgia.[10] That the images were made using a

_____

transported." The Government, however, chose only to indict and obtain a guilty plea from Defendant for possession of child pornography that had been shipped or transported in interstate or foreign commerce.

[9] The Eleventh Circuit Pattern Jury Instructions, while not addressing the possession of child pornography under 18 U.S.C. § 2252(a)(4)(B), provides that a defendant can be found guilty of the sexual exploitation of children under 18 U.S.C. § 2251(a) if:

> either . . . (b) the [visual depiction, *e.g.*, video tape] was produced using materials that had been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer; or (c) the [visual depiction, *e.g.*, video tape] was mailed or actually transported in interstate or foreign commerce.

Eleventh Circuit Pattern Jury Instructions (Criminal Cases) Instruction No. 82 (2010). As with a violation of § 2251(a), the interstate commerce element of § 2252(a)(4)(B) can be satisfied in more than one way. In this case, the Government sought to satisfy it only by the interstate or foreign shipment of the pornographic images Defendant possessed. It did not charge Defendant with possessing images that had been produced using materials shipped in interstate or foreign commerce, and Defendant did not plead guilty to this conduct.

[10] Defendant and L.C. were residing in Georgia when the photographs were taken and there is not any evidence the images ever left Georgia.

camera or saved on a hard drive that did travel from outside of Georgia is not enough. The offense of conviction here is that Defendant possessed pornographic images that traveled in interstate or foreign commerce. Every minor depicted in the images that traveled in interstate or foreign commerce are victims of the crime to which Defendant pleaded guilty. L.C. is not a victim of the offense to which Defendant pleaded guilty.

L.C. was harmed in a significant way, by the alleged sexual assaults and by pornographic images being taken of her -- the two reasons for which Davis says L.C. requires therapy. To be a "victim" entitled to restitution under § 2259(c), however, she had to be a victim of the crime of conviction. Cf. Hughey, 495 U.S. at 413 (a sentencing judge can order restitution "only for the loss caused by the specific conduct that is the basis of the offense of conviction."). The crime the Government charged here was Defendant's possession of pornographic images of minors that were shipped or transported in interstate or foreign commerce. Defendant was not convicted of sexual assault, was not convicted of producing pornographic images of L.C., and was not convicted of possessing child pornography that had been "produced using materials which have been mailed or so shipped or transported." As a result, L.C. does not qualify as a "victim" of the

§ 2252(a)(4)(B) crime for which Defendant was found guilty, and thus is not entitled to mandatory restitution under § 2259.

2.  Sufficiency of evidence to support a restitution award

Assuming that L.C. qualified as a "victim" under § 2259(c), -- which the Court finds she does not -- the Court evaluates whether there is sufficient evidence upon which to order restitution.  It is the Government's burden to prove that L.C. suffered losses as a result of Defendant's offense conduct for which restitution may be ordered.  See 18 U.S.C. § 3664(e).

To award restitution, a court must determine what "losses" a victim suffered as a proximate cause of the defendant's offense of conviction.  See 18 U.S.C. § 2259(b)(3); Paroline, 134 S. Ct. at 1722.  Here, the Government argues it is the treatment for damages from Defendant's possession of pornographic images of L.C. for which restitution should be awarded.  The Government must prove these "losses" by a preponderance of the evidence.  See 18 U.S.C. § 3664(e).

The Government submitted the Davis Report to support that L.C. requires certain therapeutic sessions as a result of Defendant's conduct involving L.C. Davis offered her opinion of the scope of the treatment regimen required and its costs over time.  The Government argues that Defendant's possession of pornographic images of L.C. triggers the restitution obligation, but the restitution

required is that needed to address all of Defendant's conduct toward L.C., in all of its components. It is this comprehensive conduct, the Government argues, that resulted in the need for treatment of L.C. and that restitution of the treatment expenses outlined by Davis constitutes the amount of the restitution that Defendant should be required to pay.

To determine if the alleged conduct in which Defendant engaged harmed L.C., the Davis Report -- which is about seven single-spaced pages long -- must be read carefully. Davis ultimately found that L.C. "experiences a number of continuing emotional and mental health concerns as a consequence of sexual abuse and manipulation by her paternal uncle, [Defendant]." (Davis Report at 1). These all caused L.C. damage, all of which caused the need for treatment and, the Government asserts, all of which justifies $53,200 in restitution.

In reaching this conclusion Davis relied on information provided by L.C. about Defendant's conduct and on L.C's statements about her tumultuous upbringing in Louisiana. (Id. at 2). The Davis Report contains significant detail about L.C.'s allegations that she was sexually abused by Defendant. L.C. described significant trauma in her life in Louisiana before she moved to Georgia. (Id. at 1-2). She then described her experience with Defendant, stating that Defendant "broker[ed] with her for sexual contact" and that his "inappropriate

behaviors and sexual abuse intensified rapidly," resulting in incidents of "sexual intercourse with [L.C. during which Defendant] sometimes used condoms and sometimes [] did not." (Id. at 2). Defendant "would take 'things' away from [L.C.] if she did not acquiesce during sexual intercourse." (Id.). Defendant had intercourse with L.C. "more than 20 times." (Id.). Defendant, Davis stated, engaged in "intense manipulation, intimidation and demeaning" of L.C. (Id. at 3). An examination of the Davis Report shows that the conduct of Defendant toward L.C. that Davis found traumatized L.C. was the sexual abuse and assaults of L.C. Davis reached this general conclusion: "[t]here is a proven relationship between child sexual abuse, validated at the time of the events, and a subsequent increase in mental health disorders." (Id.).

Davis stated a variety of consequences of Defendant's abuse of and conduct towards L.C. including "[g]aps and vagaries in [her] memory," that L.C. is "deeply ashamed," "very angry," has frustrated relationships with family members, has "experience[d] disruption of her intimate relationship with her child's father," "experience undue self blame," "[i]nternalizing blame and a false responsibility has crippled her emotionally resulting in depression and a past suicide attempt." (Id. at 3-4). Virtually all of the Davis Report attributes L.C.'s psychological injuries to Defendant's reported sexual abuse of her. There are only two sentences

in the Davis Report that mention photographs, but not as a specific source of L.C.'s psychological injuries. Those sentences are: "[Defendant] took many photographic images of her of a sexual nature. She is unsure of how those images may or may not have been disseminated and this continues to cause her anxiety." (Id. at 2). There is no evidence Defendant distributed them.[11] Davis ultimately diagnosed L.C. as having Post Traumatic Stress Disorder, Major Depressive Disorder, and various other conditions that require clinical treatment. (Id. at 5).

Davis next opined on the treatment L.C. needs, how many hours it will entail, a reasonable hourly rate for such services and a total expense of $53,200 to provide the therapy recommended. This is the basis for the restitution the Government requests the Court to order.[12]

A plain reading of the Davis Report shows that L.C.'s therapeutic needs result from the repeated sexual abuse, including intercourse L.C. reported Defendant allegedly forced on her. Nothing in the report shows that L.C. suffered from Defendant's possession of pornographic images of her or any other child.

---

[11] There are some references to a DVD of L.C. that contains video recordings of L.C., but these recordings are not of a sexual nature and show only Defendant's manipulative treatment to L.C. in Defendant's home. (See id. at 3).

[12] The Government also requests restitution for L.C.'s travel expenses to obtain treatment. See 18 U.S.C. § 2259(b)(3)(C). This amount is $8,820.

Even if the Court construed L.C.'s need for therapy to address her "anxiety" resulting from not knowing what Defendant did with the sexually explicit photographs of her -- which the Court finds unreasonable -- it is not possible to determine which portions of L.C.'s recommended therapy is attributable to L.C.'s anxiety. The Davis Report makes it clear that L.C.'s anxiety is a result of her uncertainty over whether and how Defendant "disseminated" the pornographic images of her that he possessed. (Id. at 2). This reference in the Davis Report is at most a footnote to, and not a basis for, Davis's opinion that L.C. needs therapeutic care.

The record here is that Defendant did not plead guilty to, and was not convicted of, production, dissemination, or distribution of pornographic images of L.C. Defendant was convicted of possession of pornographic images of minors obtained over the internet. Even if Defendant's conviction was also for his possession of pornographic images of L.C., not shipped or transported in interstate or foreign commerce -- which it is not -- the Davis Report does not provide any reference or detail regarding the alleged harm that L.C. suffered as a result of Defendant's possession of these pornographic images.

When the Government claims mandatory restitution under § 2259(a), it is required to present sufficient factual evidence, and the Court is obligated to support

an order of restitution "by specific factual findings." See Singletary, 649 F.3d at

1222. The Supreme Court's decision in Paroline, while addressing different

facts,[13] is instructive on why this requirement must be met. The Paroline Court

noted that, "[a]t a general level of abstraction, a court must assess as best it can

from available evidence the significance of the individual defendant's conduct in

light of the broader causal process that produced the victim's losses." Paroline,

134 S. Ct. at 1727-28. A victim's losses is defined as the costs incurred by the

victim, 18 U.S.C. § 2259(b)(3), and "is most naturally understood as costs

stemming from the source that qualifies an individual as a 'victim' in the first

place—namely, ones arising 'as a result of' the offense." Id. at 1720. The Court is

thus required to assess, if it can from the evidence, the amount of damage

Defendant's possession of pornographic images of L.C. caused L.C. to suffer in a

case where most, if not all, of the damage L.C. suffered resulted from Defendant's

alleged sexual assaults of her. The Court is unable to do so based on the evidence

in the record before the Court. The Court, in fact, is lead by the evidence to the

---

[13]     The victim in Paroline was sexually abused as a young girl in order to
produce child pornography. Images of her abuse were distributed over the internet.
The defendant in Paroline possessed images of the victim and pleaded guilty to
possession of child pornography. The defendant did not sexually abuse the
victim -- as is alleged here -- and did not produce the pornographic images of the
victim -- as is alleged here.

conclusion that any damage L.C. suffered for which she now needs treatment resulted from the alleged sexual abuse by Defendant.

The Government seeks to side-step this conclusion by asserting that the Davis Report explains that Defendant's alleged pattern of abuse and sexual assaults created feelings of "learned helplessness" in L.C., and that L.C. continues to have anxiety due to her uncertainly of how the photographs of her "may or may not have been disseminated." (Id. at 5). The Government argues that the videotaped forensic interview of L.C. with the Cobb County police department provides evidence of the sexual assaults. (Id. at 6-7). The Government argues further that Defendant possessed pornographic images of L.C. and that the police did not find any child pornography on Defendant's iPhone "likely because Defendant obtained a new phone within days of the victim's flight from his home." (Id. at 7-8). The Government argues next that Defendant's non-pornographic videos of L.C. establish Defendant's lascivious interest in L.C. and his manipulation and control over her. (Id. at 8). L.C.'s "defenselessness [in the videos] is also tangible as she implores defendant not to show the video to anyone and attempts to hide from the camera." (Id. at 10). The Government, searching for a link to Defendant's offense conduct to justify a restitution award, sums up by arguing that L.C.'s psychological state "correlate[s] directly to L.C.'s 'anxiety' referenced in the Davis Report

regarding Defendant's possession of child pornography of her." (Id. at 11). This characterization of the evidence and the Government's strained interpretation of it does not provide the Court with a sound basis to find facts sufficient to support a restitution award. The Government's interpretation of the evidence does not provide a basis for finding that L.C. was harmed by Defendant's possession of pornographic images of her -- assuming possession of these images was a sufficient basis for a restitution award in the first place.

An award of restitution for the possession of child pornography is often appropriate. When it is, the Government provides evidence detailing the specific harm that the possession and viewing of the pornographic images caused to the victims. In United States v. Brannon, the Court adopted the Magistrate Judge's finding that the psychologist report, which demonstrated that the victim suffered continuing, cognizable harm each time an individual viewed an image depicting her abuse, and the victim's impact statement as to this harm,[14] coupled with

---

[14] The victim stated that she was living:

> everyday with the horrible knowledge that someone somewhere is watching the most terrifying moments of my life and taking grotesque pleasure in them. I am a victim of the worst kind of exploitation: child porn. Unlike other forms of exploitation, this one is never ending. Every day people are trading and sharing videos of me as a little girl being raped in the most sadistic ways[.] They don't know

statements by her mother and stepfather, established by a preponderance of the

evidence that the defendant's possession of pornographic images of the victim

caused identifiable injuries that required therapy.  United States v. Brannon,

09-cr-38, 2011 WL 2912862, at *7 (N.D. Ga. May 26, 2011) report and

recommendation adopted, 09-cr-38-1, 2011 WL 2912809 (N.D. Ga. July 19, 2011).

The Court, in awarding restitution to the victim, apportioned to the defendant a

share of the victim's total losses in a reasonable approximation of the defendant's

share of the causation based upon his conduct.  Id. at *8-9.

In Paroline, the Supreme Court noted that the victim provided an impact

statement stating:

> Every day of my life I live in constant fear that someone will see my
> pictures and recognize me and that I will be humiliated all over again.
> It hurts me to know someone is looking at them—at me—when I was
> just a little girl being abused for the camera.  I did not choose to be
> there, but now I am there forever in pictures that people are using to
> do sick things.  I want it all erased.  I want it all stopped.  But I am
> powerless to stop it just like I was powerless to stop my uncle . . . .
> My life and my feelings are worse now because the crime has never
> really stopped and will never really stop . . . .  It's like I am being
> abused over and over and over again.

> me, but they have seen every part of me.  They are being entertained
> by my shame and pain.

Brannon, 2011 WL 2912862, at *6.

Paroline, 134 S. Ct. at 1717.  By providing such a statement -- coupled with additional evidence such as mental health evaluations -- a district court is able to ascertain, at least in general, the harm that the victim suffers due to the distribution and viewing of pornographic images of the victim.

The link between the damage L.C. claims and Defendant's offense of conviction here is missing.  Even if Defendant was the sole possessor of pornographic images of L.C., and assuming this possession was within Defendant's offense of conviction and resulted, at least in part, in L.C.'s treatment needs, it is impossible to parse this conduct from the real cause of L.C.'s trauma -- the psychological impact of Defendant's alleged repeated sexual assaults of her. The complication here is in "disaggregating losses sustained as a result of the initial physical abuse," which is alleged to have occurred in this case.  Cf. id. at 1722.  Common sense dictates that the alleged sexual abuse is what really damaged L.C., which was the focus of L.C.'s first report of Defendant's conduct to authorities and almost the entirety of the basis upon which Davis recommends treatment.  The Government has not provided any evidence that would allow the Court to separate the harm that L.C. may have suffered as a result of the alleged

sexual assaults[15] and sexually abusive relationship, from the harm, if any, that

resulted from Defendant's possession of pornographic images of L.C or other

minors.[16] There is no "basis for [a] reasonable approximation is at hand" to

calculate L.C.'s losses, and, the Court thus is unable to support an order of

restitution with the "specific factual findings," required. See <u>Futrell</u>, 209 F.3d at

1291-92; <u>Singletary</u>, 649 F.3d at 1222. The Court concludes that it cannot order

Defendant to pay any restitution in this case because there is no legal or factual

basis to do so.

---

[15]     Even if the Court could award restitution to L.C. based upon the harm
caused by the alleged sexual assaults, the Government would be required to prove
by a preponderance of the evidence that the assaults occurred. See 18 U.S.C.
§ 3664(e). The only evidence of the sexual assaults are L.C.'s unsworn statements
to law enforcement and to Davis that the assaults occurred. Defendant denies ever
sexually assaulting L.C. The Government has failed to prove by a preponderance
of the evidence that the sexual assaults occurred.

[16]     At the Restitution Hearing, the Government acknowledged that it could have
retained an expert to apportion out the harm L.C. suffered from Defendant's
possession of the pornographic images. (Restitution Hearing Transcript p. 154,
lines 14-20).

## IV.    CONCLUSION

For the reasons stated in this Opinion and Order,

**IT IS HEREBY ORDERED** that Defendant's sentence does not include an

award of restitution.

**SO ORDERED** this 9th day of October, 2014.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE